ATTORNEY FOR APPELLANT
Mark E. Spitzer
Marion, Indiana

ATTORNEY FOR APPELLEES
Joseph W. Eddingfield
Wabash, Indiana

# In the
# Indiana Supreme Court

No. 27S02-0309-CV-398

NEW WELTON HOMES, SUCCESOR IN INTREST TO,
DON WELTON MANUFACTURED HOUSING, INC.,

*Appellant (Defendant below),*

v.

LANCE ECKMAN AND KAREN ECKMAN,

*Appellees (Plaintiffs below),*

AND

RICHARD C. GREEN D/B/A GREEN CONCRETE,

*Appellee (Defendant below).*

Appeal from the Grant Circuit Court, No. 27C01-0112-CP-876
The Honorable Thomas R. Hunt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 27A02-0208-CV-694

**June 28, 2005**

**Shepard, Chief Justice.**

A family contracted for a manufactured home. The agreement included a warranty requiring any claims for breach to be brought within one year. Two years after the home was

completed, the purchasers experienced foundation damage after substantial rains and sued the seller for breach of contract. They urge that the discovery rule used for determining when a cause of action accrues within the meaning of the statute of limitations be deployed to extend warranty agreements in contracts. We conclude that there is little justification for such judicial alteration of private contracts.

**Facts and Procedural History**

In December 1998, Lance and Karen Eckman contracted with Don Welton Manufactured Housing, Inc. (now "New Welton") to purchase and place a 1999 Commodore Modular Home. Among other things, the agreement required installation of a foundation on which to place the modular home, and the creation of a perimeter drain to prevent moisture encroachment on and beneath the foundation. New Welton obtained a proposal from Green Concrete to help backfill the foundation and perimeter drain, and grade and seed that area. New Welton completed this project in June 1999.

The area where the Eckmans reside experienced a drought between 1999 and 2001. There were several consecutive days of rainfall in late May and early June 2001. About a month after these rains, the Eckmans noticed settling and cracking inside the modular home. They discovered water standing around the perimeter of it. Further investigation revealed moisture accumulated inside the foundation area and around the structural support system under the home. This discovery occurred about two and a half years after the home's completion.

The Eckmans sued New Welton and Green, claiming a failed perimeter drainage system and seeking a judgment for the resulting damage. New Welton moved for summary judgment, citing the claims provision in the contract between them. The Eckmans and New Welton had signed a contract under which they agreed that in the event either of them breached, claims for

2

the breach must be brought within one year of the breach.[1]  The trial court denied the motion for summary judgment, holding that the discovery rule applied to the contractual limitations period.

The Court of Appeals affirmed, holding that a discovery rule could apply to a breach of contract action that included a limitation action provision.  New Welton Homes v. Eckman, 786 N.E.2d 1172, 1178 (Ind. Ct. App. 2003) vacated.  We granted transfer.

**Contractual Limitation v. Discovery Rule**

The Eckmans argue that the discovery rule should apply because they were not able to detect the defective perimeter drain until after the damage surfaced from the rainfall of May 2001.  To support their position, the Eckmans cite Barnes v. A.H. Robbins Co., 476 N.E.2d 84 (Ind. 1985), which states that "it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware that a cause of action exists."  Id. at 86.   As such, the Eckmans believe that the contractual limitation provision began to run after the damage was discovered, not when it occurred.  (Appellees' Br. at 9).

The Eckmans also cite Essex Wire Corp. v. M.H. Hilt Co., 263 F.2d 599 (7th Cir. 1959), where the court held that a cause of action accrues at the time that one suffers legal injury and resulting damage that is sustainable and that both elements must come into existence before the limitation period commences to run.  Like the Court of Appeals, the Eckmans rely on Habig v. Bruning, 613 N.E.2d 61 (Ind. Ct. App. 1993), to support the extension of the discovery rule from tort to contractual matters.  Based on their understanding of Habig, the Eckmans argue that "the statute of limitations began to run when [they] 'knew or in the exercise of due diligence could have discovered'" that their property had been damaged as a result of New Welton's breach.  Id. at 65; (Appellees' Br. at 6 – 7).

---

[1] The one-year period of limitation found in paragraph 15 of the contract states: "I understand and agree that – if either of us should breach this contract -- the other of us shall have only one year, after the occurrence of that breach, in which to commence an action for a breach of this contract."  (Appellant's App. at 55.)
Similar clauses have also been challenged and upheld in federal courts.  See e.g. Resolution Trust Corp. v. Krantz, 757 F.Supp. 915 (N.D. Ill. 1991).

Each of these cases represent disputes in which the courts were called upon to determine when a cause of action might "accrue" within the meaning of the applicable statute of limitation. New Welton urges that these interpretations of statutory limitation periods are inapplicable. Using arguments typically found in the insurance realm, New Welton relies on Summers v. Auto Owners Ins. Co., 719 N.E.2d 412, 414 (Ind. Ct. App. 1999), which reinforces the point that a contract limitations provision is valid as long as a reasonable time is afforded.

## The Nature of Contract

A contract expresses the legal relationship between parties manifested by their assent and which organized society recognizes as giving remedies to the holder of a right against the bearer of a legal obligation. See, 1 Arthur L. Corbin, Corbin on Contracts §§ 1.2-1.3 (Joseph M. Perillo ed., rev. ed. 1993). They represent "private, voluntary allocations by which two or more parties distribute specific entitlements and obligations." Johnson v. Scandia Associates, Inc., 717 N.E.2d 24, 29 (Ind. 1999). Professor Farnsworth discussed voluntary allocation of rights and obligations this way:

> [An e]xchange is the mainspring of any economic system that relies as heavily on free enterprise as does ours. Such a system allocates resources largely by direct bilateral exchanges arranged by bargaining between individuals. In these exchanges each gives something to the other and receives in return something from the other.

1 E. Allan Farnsworth, Farnsworth on Contracts § 1.2 (3rd ed. 2004).

Indiana law generally holds that "contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." Summers, 719 N.E.2d at 414. While contractual provisions may sometimes be avoided if the claimant can prove fraud, duress, misrepresentation, adhesion, or illusory contract, the Eckmans do not challenge the contract or the claims provision on any of these grounds.

4

Our courts have regularly held that unless a contractual provision contravenes a statute or public policy, "actions on a policy that are brought after the expiration of the limitation period provision will be barred." Brunner v. Econ. Preferred Ins. Co., 597 N.E.2d 1317, 1318 (Ind. Ct. App. 1992). See also, United Techs. Auto. Sys., Inc. v. Affilliated FM Ins. Co., 725 N.E.2d 871 (Ind. Ct. App. 2000) trans. denied; Burress v. Indiana Farmers Mut. Ins. Group, 626 N.E.2d 501 (Ind. Ct. App. 1993) trans. denied. The Brunner court adopted the reasoning of what Judge Barteau called the "vast majority of courts," that an insured's failure to discover a loss within the time provided under the contract for bringing a claim is immaterial. Brunner, 597 N.E.2d at 1318-19. See also United Techs., 725 N.E.2d at 875.

The Eckman's proposal to apply the discovery rule to contract law is based on tort principles. "The basic theory underlying the distinction between contract and tort is that tort liability is imposed by law and that contract liability is the product of an agreement of the parties." Greg Allen Constr. Co. v. Estelle, 798 N.E.2d 171, 173 (Ind. 2003). Similar to insurance policies, "we must leave to the individual parties the right to make the terms of their agreements as they deem fit and proper, and, as long as those terms are clear and unambiguous and are not unlawful, we can only enforce them as agreed upon." C.A. Enter., Inc. v. Employers Commercial Union Ins. Co. of America, 176 Ind. App. 551, 554, 376 N.E.2d 534, 536 (Ind. Ct. App. 1978).

The Court of Appeals has observed that allowing the discovery rule to supercede the contractual limitations in insurance cases would "burden [parties] with obligations they did not anticipate or undertake, and bestow . . . a windfall." Burress, 626 N.E.2d at 504-05. The Court of Appeals has also said, "[w]hen there is no ambiguity in a contractual provision, that provision's plain language controls." Id. at 505. Here, both parties agreed to the provisions, and the contract limitation should be enforced. The action did not commence within the agreed upon period and is therefore time-barred.

## Conclusion

We reverse the trial court and remand with directions to grant judgment to New Welton.


Sullivan and Boehm, JJ., concur.
Dickson, J., concurs with separate opinion.
Rucker, J., dissents with separate opinion.

**Dickson, Justice, concurring**

It should be noted that the Court today enforces a contractual provision shortening the time in which to bring an action for breach of a contract requiring installation of a perimeter drain around a mobile home foundation. This does not involve a contractual provision attempting to shorten a statutory limitation period for personal injury actions. The contract at issue is not an insurance policy. And there is no claim that it is a contract of adhesion.

In fact, the plaintiffs do not dispute the one-year limitation period provided in the contract. Rather, it appears that the sole issue is the construction of the contractual provision "after the occurrence of that breach" that triggers the one year period. Appellant's App'x. at 55. The defendant appeals the trial court's decision to apply a discovery rule rather than to follow the contractual language. I concur with the Court's decision today to enforce the plain language of the parties' contract.

**RUCKER**, **Justice, dissenting.**

Because I believe the discovery rule should apply to this contract in spite of the limitation provision, I respectfully dissent.

The majority opinion relies wholly on insurance policy cases to support its holding. The majority cites Summers v. Auto-Owners Ins. Co., 719 N.E.2d 412 (Ind. Ct. App. 1999) to uphold the rule that "contractual limitations [in insurance policies] shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." Id. at 414 (quotations omitted). See Slip op. at 5. The majority also relies on Brunner v. Economy Preferred Ins. Co., 597 N.E.2d 1317 (Ind. Ct. App. 1992) for the rule that "a provision in an insurance policy that limits the time in which a suit may be brought to a period less than that fixed by the statute of limitations is binding, unless it contravenes a statute or public policy." Id. at 1318. See Slip op. at 6.

This rule apparently goes back as far as 1908, when this Court declared, "the great weight of the authorities [holds] that a provision in an insurance policy limiting the time in which suit may be brought thereon to a period less than that fixed by statute of limitations is binding, unless it contravenes a statute." Caywood v. Supreme Lodge of Knights & Ladies of Honor, 171 Ind. 410, 86 N.E. 482, 483 (1908). In Caywood, our Court relied on the reasoning of the United States Supreme Court in Riddlesbarger v. Hartford Ins. Co., 74 U.S. 386 (U.S. 1868), which held that limitations provisions in insurance policies must be adhered to because "[i]t is clearly for the interest of insurance companies that the extent of losses sustained by them should be speedily ascertained, and it is equally for the interest of the assured that the loss should be speedily adjusted and paid." Id. at 390.

As the above cases reveal, there are policy reasons why the limitation provisions in insurance policies should be strictly adhered to. "[T]hese limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates." Summers, 719 N.E.2d at 414. In this case for example the Court of Appeals reasoned,

8

> These insurance cases demonstrate this court's concern with maintaining the balance struck by the parties to the insurance contract. Premiums are set by the insurers based upon the kind of risk to be covered and the length of time for that coverage. That balance might be upset by extending the time period within which to bring suit. We also are concerned with preserving the insurer's opportunity to investigate claims.

New Welton Homes v. Eckman, 786 N.E.2d 1172, 1176 (Ind. Ct. App. 2003). As the Court of Appeals noted, "The valid concerns presented in insurance industry cases are not present here." Id. at 1177. I agree.

Insurance policy premiums depend directly on the length of time coverage applies and the time in which a claim may be brought. The price agreed to by parties in a construction contract, however, is little affected by a provision limiting the time in which to bring suit. Thus the policy reasons to uphold limitation provisions in insurance policies simply do not make sense in the context of this construction contract, where due diligence could not have uncovered the latent defect in the foundation. As we noted in Barnes v. A.H. Robins Co., Inc., 476 N.E.2d 84, 86 (Ind. 1985), "The [discovery] rule is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists."

For the aforementioned reasons, I respectfully dissent.